# **Exhibit 1**

# FAIRFAX CIRCUIT COURT
# CIVIL CASE COVERSHEET

**2023 13353**

FILED
CIVIL INTAKE
2023 SEP 18 P 12:34
JOHN T. FREY
CLERK CIRCUIT COURT
FAIRFAX, VA

**Parties:**

| Plaintiffs | Defendants |
|---|---|
| 1. Greystones Consulting Group LLC | 1. Ben Nussbaum |
| 2. | 2. |
| 3. | 3. |

*Plaintiff proceeding without Counsel – Address and Daytime Phone Number required on Complaint

**Plaintiff Attorney:**

Name: Lewis Rhodes    Bar ID: 70255
Firm: Reston Law Group LLP
Street: 2100 Reston Parkway, Suite 450
City: Reston    State: VA    Zip: 20191
Phone Number: 703-868-8653    Fax Number: 703-264-2226
E-mail Address: LRhodes@RestonLaw.com

**Nature of Complaint** (Check only one)    * Cases in the Civil Tracking Program

| | | |
|---|---|---|
| Administrative Appeal | Defamation * | Malpractice – Medical * |
| Affirmation of Marriage | Delinquent Taxes * | Mechanics/Vendors Lien * |
| Aid & Guidance | Eminent Domain | Partition * |
| Appeal Decision of Board of Zoning | Encumber/Sell Real Estate | Personal Injury – Assault * |
| Appeal of Process/Judicial Appeal | Erroneous Assessments | Personal Injury – Auto * |
| Appointment Church/Organization Trustees | Expungement | Personal Injury – Emotional * |
| Arbitration | False Arrest/Imprisonment* | Personal Injury – Premises Liability* |
| Attachment | Fiduciary/Estate Complaint | Property Damage* |
| Complaint – Equity * | Garnishment–Federal–180 days | Products Liability* |
| ☒ Complaint – Legal Cause of Action * | Garnishment–Wage–180 days | Quiet Title * |
| Compromise Settlement | Garnishment–Other – 90 days | Real Estate * |
| Condemnation* | Guardian/Conservator Adult | Restoration of Driving Privilege |
| Confession of Judgment | Guardianship/Minor | Vital Record Correction |
| Construction * | Injunction | Writ Habeas Corpus |
| Contract * | Interpleader | Writ Mandamus |
| Conversion* | Insurance * | Wrongful Death* |
| Court Satisfaction of Judgment | Judicial Review | Wrongful Discharge * |
| Declare Death | Malicious Prosecution * | OTHER: |
| Declaratory Judgment * | Malpractice – Legal * | |

Damages in the amount of $ 250,000 are claimed.

Requested Service: Sheriff ☐  Private Process Server ☒  DMV ☐  Secretary of Commonwealth ☐
State Corporation Commission ☐  Publication ☐  No Service at this time ☐

**VIRGINIA:**

### FAIRFAX COUNTY CIRCUIT COURT

| | |
|---|---|
| GREYSTONES CONSULTING GROUP, LLC  )<br>)<br>Plaintiff  )<br>)<br>v.  )<br>)<br>BEN NUSSBAUM  )<br>)<br>Defendant  )<br>) | Case No. _____ |

## COMPLAINT

COMES NOW Plaintiff Greystones Consulting Group, LLC ("Greystones") in support of its Complaint against Mr. Ben Nussbaum and states as follows:

### NATURE OF THE CASE

1. This is a case of a breach of an employment agreement. Greystones hired Mr. Nussbaum as a full-time employee for nearly two years. Among Mr. Nussbaum's responsibilities was his role in the creation of software. Mr. Nussbaum, in direct violation of his employment agreement, has refused to turn over any of the work product he was paid to create. More recently Mr. Nusbaum is competing against Greystones while potentially using Greystones' intellectual property.

### PARTIES, JURISDICTION AND VENUE

2. Plaintiff Greystones is a Virginia Limited Liability Corporation with its principle office in Washington, D.C..

3. Defendant Ben Nussbaum is a natural person who resides in Cleveland, OH.

4. This Court has jurisdiction over this matter pursuant to VA. Code §17.1-513 and pursuant to the contract between the parties that selected exclusive jurisdiction in Fairfax County, VA.

5. Venue is appropriate in accordance with the parties' contract.

6. This Court can exercise personal jurisdiction over Mr. Nussbaum pursuant to VA. Code § 8.01-328.1.

## SUMMARY OF FACTS

7. Greystones is a certified Woman-Owned Small business that provides high end data analytics and other information technology solutions to the Federal Government.

8. Greystones was awarded a Small Business Innovation Research from the U.S. Air Force (the "SIBR Contract") contract to develop a data analytics software tool for the Air Force.

9. Greystones hired Mr. Nussbaum to serve as its principal investigator under the SBIR Contract and as the company's Chief Technology Officer.

10. Mr. Nussbaum commenced his employment on June 12, 2020.

11. Greystones allowed Mr. Nussbaum to work remotely from his home in Cleveland, OH throughout his employment.

12. The company issued Mr. Nussbaum a company-owned laptop and instructed him to use this laptop for all company work.

13. Mr. Nussbaum and Greystones entered into an employment agreement on June 12, 2020 (the "Employment Agreement"). A copy of this agreement is attached as Exhibit A.

14. During Mr. Nussbaum's employment his primary responsibility was to work on the SBIR contract.

15. In this role, Mr. Nussbaum assisted in the creation of Greystones' data analytics tool with most of his efforts dedicated to architecting and developing code to build prototypes for the SBIR contract.

16. Mr. Nussbaum worked with two different Air Force units to create, test and review two different software prototypes.

17. At all times Mr. Nussbaum was performing as a salaried employee of Greystones and operating on behalf of and at direction of the company.

18. In May of 2022, Mr. Nussbaum resigned from Greystones.

19. As part of Mr. Nussbaum's departure, he was required to return all of Greystones' property – including the laptop the company provided to him and all of the software he developed for the company.

20. The Employment Agreement states:

**Developed Property**. The Parties acknowledge and agree that all ideas, data, deliverables, reports, work products, innovations, improvements, know-how, inventions, designs, developments, techniques, methods and other results of Employee's employment (in draft and final forms), and all related documentation (such as, but not limited to, notes, records, documents, drawings, and designs), which Employee may conceive, reduce to practice or develop during the period while Employee is employed by the Company, alone or in conjunction with another or others, whether during or out of regular business hours, whether or not on the Company's premises or with the use of its equipment, and whether at the request or upon the suggestion of the Company or otherwise, will be the sole and exclusive property of the Company. Without limiting the foregoing, Employee also acknowledges that all original works of authorship which are made by Employee (solely or jointly with others) within the scope of Employee's employment or which relate to the business of the Company and which are protectable by copyright are "works made for hire" pursuant to the United States Copyright Act (17 U.S.C. Section 101). Employee hereby assigns to the Company or its designee all of Employee's right, title and interest in and to all of the foregoing. At any time during or after the period during which Employee is employed by the Company, Employee will fully cooperate with the Company and its attorneys and agents in the preparation and filing of all papers and other documents as may be required to perfect the Company's rights in and to any of such ideas and inventions described in this Section 6.

21. While Mr. Nussbaum returned this laptop to the company, he completely wiped the computer before returning it.

22. When Greystones asked Mr. Nussbaum about his work product, he stated that all the work he did for Greystones was on the laptop.

23. Greystones' outsourced IT company did an analysis of that laptop and determined that Mr. Nussbaum had not used the laptop in a considerable amount of time, if ever.

24. Despite multiple demands from Greystones, Mr. Nussbaum has refused to respond or provide any of the software or other IP he created during his employment with Greystones.

25. At some point in the summer of 2023, Mr. Nussbaum worked with a third-party company to compete against Greystones for a federal contract opportunity.

26. This opportunity requires the use of software source code similar to the programs Mr. Nussbaum created under the Greystones' SBIR Contract.

27. Greystones was an incumbent contractor for the federal opportunity. Greystones was performing work for this federal agency during Mr. Nussbaum's employment.

28. Mr. Nussbaum performed some work for this agency during his employment with Greystones and was familiar with the company's work under that contract.

29. Mr. Nussbaum used this knowledge and information to compete against Greystones for the follow-on contract.

30. The Employment Agreement states:

**Non-Solicitation of Clients.** The Parties acknowledge and agree that the Company's existing relationships with its clients and the relationships made or enhanced in the course of Employee's employment with the Company, were derived at considerable expense and belong exclusively to the Company. During the term of employment and for a period of two (2) years following the date of the cessation of Employee's employment for any reason whatsoever, Employee shall not,

without the prior written consent of the Company, on Employee's own behalf or on behalf of any other person or entity, contact, solicit, divert, induce or otherwise cause or attempt to solicit, divert, induce or otherwise cause, any customer or client of the Company during the two (2) years prior to cessation of employment, or prospective customer or client of the Company to which the Company has made or intends to make a proposal at the time of the cessation of Employee's employment (a) to cease being a customer of or to not become a customer of the Company, (b) to divert any business of such customer from the Company, or otherwise, to discontinue or alter in a manner adverse to the Company, such business relationship, or (c) otherwise interfere with, disrupt, or attempt to interfere with or disrupt, the contractual relationship between the Company and any of its customers or clients.

31. Mr. Nussbaum never contacted Greystones to ask for consent to compete for the federal contract opportunity.

## COUNT I
## BREACH OF CONTRACT

32. The proceeding paragraphs are hereby incorporated as if fully set forth herein.

33. The Employment Agreement is a valid, binding contract between Mr. Nussbaum and Greystones.

34. Greystones paid Mr. Nussbaum in accordance with the terms of the Employment Agreement.

35. The Employment Agreement required Mr. Nussbaum to turn over all of his work product and developed software to Greystones.

36. Mr. Nussbaum has refused to provide the source code and other items to Greystones.

37. Mr. Nussbaum's refusal to turnover this property is a breach of the Employment Agreement.

38. Greystones has been harmed by this breach.

## COUNT II
## BREACH OF CONTRACT

39. The proceeding paragraphs are hereby incorporated as if fully set forth herein.

40. The Employment Agreement is a valid, binding contract between Mr. Nussbaum and Greystones.

41. Greystones paid Mr. Nussbaum in accordance with the terms of the Employment Agreement.

42. The Employment Agreement barred Mr. Nussbaum from attempting to solicit Greystones clients.

43. Mr. Nussbaum knew that Greystones worked under a certain federal contract as he did work under that contract. In performing this work, he gained knowledge about the client and Greystones' specific work.

44. Mr. Nussbaum used this knowledge to assist a third-party company compete against Greystones.

45. Mr. Nussbaum's actions are a breach of the Employment Agreement.

46. Greystones was harmed by this breach.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests this Court to enter judgment in favor of Greystones against Mr. Nussbaum:

a) Ordering Mr. Nussbaum to return all of Greystones' property to the company;

b) Awarding Greystones damages in the amount of $250,000 or an amount to be proven at trial;

c) Award Greystones its attorney's fees and costs; and

d) Grant such other relief as necessary and appropriate.

Dated: September 16, 2023              Respectfully Submitted,

By: *Lewis Rhodes*
_____

Lewis P. Rhodes (VSB# 70255)
Reston Law Group LLP
2100 Reston Parkway, Suite 450
Reston, Virginia 20191
Tel. 703-483-2816
lrhodes@restonlaw.com



**EMPLOYMENT AGREEMENT**

This EMPLOYMENT AGREEMENT, is made and entered into effective the      , of          ,          between Greystones Consulting Group, LLC, and          .

W I T N E S S E T H

WHEREAS, the Company is engaged in the business of government contracting in the information technology services industry;

WHEREAS, the Company desires to employ the Employee, and Employee desires to accept employment with the Company;

WHEREAS, the Parties acknowledge and agree that during the employment relationship, certain trade secrets, confidential and/or proprietary information belonging to the Company or to the Company's clients will be disclosed to Employee; and

WHEREAS, the Parties acknowledge and agree that certain restrictions upon Employee during Employee's employment and following Employee's termination are reasonably necessary to protect the legitimate business interests of the Company.

NOW, THEREFORE, in consideration of the foregoing, the employment or continued employment of Employee, the mutual obligations herein contained, and other good and valuable consideration, the receipt and sufficiency of which is acknowledged, the Parties hereby covenant and agree as follows:

1. **Definitions.**

    (a)     Trade Secrets.  As used herein, the term "Trade Secrets" shall mean any and all information, in any format, including, without limitation, any program, formula, pattern, compilation, derivative work, device, method, technique, or process, that derives independent economic value from not being generally known to, and not being readily ascertainable by proper means, by other persons who can obtain economic value from its disclosure or use, and which is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

    (b)     Confidential Information.  As used herein, the term "Confidential Information" shall mean any and all confidential or proprietary information, whether in written, oral, electronic or other form, not in the public domain of the Company. Confidential Information shall include, but is not limited to, Trade Secrets, technical or nontechnical data, formulas, patterns, compilations, programs, devices, methods, techniques, drawings, processes, discoveries, developments, designs, financial data, business plans, product plans, technical documentation and specifications, price lists, or lists of actual or potential customers, clients, partners, vendors or suppliers.  Confidential Information shall also include all such information supplied by, disclosed by or made available to Employee or the Company by a customer or client of the Company.

(c) <u>Company Business</u>.  As used herein, the term "Company Business" shall refer to the business of government contracting in the information technology industry and related activities and services and such other lines of business in which the Company engages during the course of the Employee's employment with the Company.

2. **<u>Representations and Warranties.</u>**  Employee hereby makes the following representations and warranties, and acknowledges that these and all other representations and warranties contained in this Agreement are material to this Agreement.

(a) Employee represents and warrants that Employee has carefully read and considered this Agreement, including the restrictive covenants set forth below, that Employee understands the terms and conditions set forth herein, and voluntarily agrees to be fully bound by and subject thereto.

(b) Employee represents and warrants that Employee is not a party to or bound by any agreement or understanding of any kind in conflict with the terms and conditions of this Agreement, and that Employee's employment with the Company as contemplated hereunder will not violate or result in the violation of any agreement to which Employee may be bound, including, but not limited to any agreement restricting the competitive or other activities of Employee.

3. **<u>Employment/Duties of Employee.</u>**  The Company hereby employs Employee and Employee agrees to be employed by the Company, subject to the terms and conditions as set forth in this Agreement.  Employee shall render such services, perform such duties, carry out such responsibilities, and act in such capacities for the Company as may be prescribed from time-to-time by the Company.  Employee understands that Employee's employment with the Company requires Employee's full attention and effort.  Employee hereby agrees that during the period of employment by the Company, Employee will not, without the Company's prior written consent, engage in any employment or business activity other than for the Company, including but not limited to employment or business activity which is competitive with, or would otherwise conflict with, the Company Business or Employee's employment by the Company.

4. **<u>Compensation, Benefits and Related Matters.</u>**

(a) <u>Base Salary.</u>  During the term of this Agreement, the Company will pay Employee an annual salary (the "Base Salary") at a rate of $<u>XXXXX.XX</u>payable in regular periodic payments in accordance with the Company's standard payroll practices and subject to payroll deductions and tax withholdings in accordance with the Company's usual practices and as required by law.  The Base Salary may be increased (separately from and in addition to any performance-based bonus awarded to the Employee consistent with Section 4(b) below) from time to time at the discretion of the Company based upon an annual review.

(b) <u>Medical Benefits</u>.  During the term of this Agreement, Employee will be eligible to participate in the Company's employee benefit programs, including but not limited to, medical, dental, and other group plans, in accordance with the terms of those plans.  The Company reserves the right in its sole discretion to amend, revise and/or terminate such benefits or plans at any time.

(c) <u>Expenses</u>. Subject to the Company's standard practices, Employee shall be entitled to reimbursement on a monthly basis for all reasonable business related expenses incurred and paid by Employee in the performance of Employee's duties hereunder, subject to the submission of appropriate vouchers, bills and receipts in accordance with the Company's policies from time to time in effect, including sufficient detail to entitle the Company to income tax deductions for such paid items, if such items are so deductible. To the extent required by applicable law, such payments may result in imputed income, which shall be subject to withholding from Employee's wages in the amount and manner prescribed by such law.

5. **Employment At Will**. The parties acknowledge and agree that this Agreement shall not be construed as an agreement by the Company to employ Employee for any specific period of time, and that Employee is and shall remain terminable "at-will" such that either the Employee or the Company may terminate the employment relationship at any time, for any reason, with or without prior notice.

6. **Developed Property.** The Parties acknowledge and agree that all ideas, data, deliverables, reports, work products, innovations, improvements, know-how, inventions, designs, developments, techniques, methods and other results of Employee's employment (in draft and final forms), and all related documentation (such as, but not limited to, notes, records, documents, drawings, and designs), which Employee may conceive, reduce to practice or develop during the period while Employee is employed by the Company, alone or in conjunction with another or others, whether during or out of regular business hours, whether or not on the Company's premises or with the use of its equipment, and whether at the request or upon the suggestion of the Company or otherwise, will be the sole and exclusive property of the Company. Without limiting the foregoing, Employee also acknowledges that all original works of authorship which are made by Employee (solely or jointly with others) within the scope of Employee's employment or which relate to the business of the Company and which are protectable by copyright are "works made for hire" pursuant to the United States Copyright Act (17 U.S.C. Section 101). Employee hereby assigns to the Company or its designee all of Employee's right, title and interest in and to all of the foregoing. At any time during or after the period during which Employee is employed by the Company, Employee will fully cooperate with the Company and its attorneys and agents in the preparation and filing of all papers and other documents as may be required to perfect the Company's rights in and to any of such ideas and inventions described in this Section 6.

7. **Trade Secrets and Confidential Information**.

(a) <u>Use.</u> The Parties acknowledge that during the course of the employment relationship, Trade Secrets and/or Confidential Information may be disclosed to Employee, and that the improper or unauthorized disclosure of this information would cause the Company to suffer substantial, immediate and irreparable harm. Employee agrees that Employee will use the Trade Secrets and Confidential Information exclusively for the benefit of the Company, and will hold in strict confidence and will not otherwise disclose, use, reproduce, distribute, transmit, reverse engineer, decompile, disassemble, or transfer, directly or indirectly, in any form, by any means, or for any purpose, the Trade Secrets and Confidential Information.

(b) <u>Duration of Restriction.</u> Employee acknowledges and agrees that Employee's obligations under this Section 7 shall remain in effect during Employee's employment and indefinitely following the cessation thereof.

8. **Non-Solicitation of Clients.** The Parties acknowledge and agree that the Company's existing relationships with its clients and the relationships made or enhanced in the course of Employee's employment with the Company, were derived at considerable expense and belong exclusively to the Company. During the term of employment and for a period of two (2) years following the date of the cessation of Employee's employment for any reason whatsoever, Employee shall not, without the prior written consent of the Company, on Employee's own behalf or on behalf of any other person or entity, contact, solicit, divert, induce or otherwise cause or attempt to solicit, divert, induce or otherwise cause, any customer or client of the Company during the two (2) years prior to cessation of employment, or prospective customer or client of the Company to which the Company has made or intends to make a proposal at the time of the cessation of Employee's employment (a) to cease being a customer of or to not become a customer of the Company, (b) to divert any business of such customer from the Company, or otherwise, to discontinue or alter in a manner adverse to the Company, such business relationship, or (c) otherwise interfere with, disrupt, or attempt to interfere with or disrupt, the contractual relationship between the Company and any of its customers or clients.

9. **Non-Solicitation of Company Personnel**. Employee further covenants and agrees that during Employee's employment and for a period of two (2) years following the date of the cessation of Employee's employment with the Company for any reason whatsoever, Employee will not either individually or on behalf of or through any third party: (a) solicit, induce or attempt to solicit or induce any employee, agent or contractor to terminate their employment or relationship with the Company, its successors, affiliates or subsidiaries; (b) otherwise interfere with or disrupt the Company's relationship with its employees, agents or contractors; or (c) solicit, entice, take away, employ or otherwise engage any person employed or retained by the Company, its successors, affiliates or subsidiaries while any such person is employed or providing services or within six (6) months after any such person ceases being employed or providing services to the Company, its successors, affiliates or subsidiaries.

10. **Non-Solicitation of Distributors and Suppliers**. Employee further covenants and agrees that during Employee's employment and for a period of two (2) years following the date of the cessation of Employee's employment with the Company for any reason whatsoever, Employee will not either individually or on behalf of or through any third party, directly or indirectly: (a) solicit, induce or attempt to solicit or induce any supplier, distributor, business partner, or other party with whom the Company has contracted, to terminate or modify a contractual or other business relationship with the Company; and (b) otherwise interfere with or disrupt the Company's relationships with its suppliers, distributors, business partners or other contracting parties.

11. **Non-disparagement**. Employee agrees and covenants that Employee will not at any time make, publish or communicate to any person or entity or in any public forum any defamatory or disparaging remarks, comments or statements concerning the Company or its businesses, or any of its employees, officers, and existing and prospective customers, suppliers,

investors and other associated third parties. This Section does not, in any way, restrict or impede Employee from complying with any applicable law or regulation or a valid order of a court of competent jurisdiction or an authorized government agency, provided that such compliance does not exceed that required by the law, regulation or order. Employee shall promptly provide written notice of any such order to an authorized officer of the Company within two days of receiving such order, but in any event sufficiently in advance of making any disclosure to permit the Company to contest the order or seek confidentiality protections, as determined in the Company's sole discretion.  Nothing in this paragraph is intended to impair any right to engage in protected concerted activity under Section 7 of the National Labor Relations Act.

12. **Return of Company Property.**  Immediately following the date of the cessation of Employee's employment with the Company, or at any other time upon request of the Company, Employee shall return all property in Employee's possession belonging to the Company, including, but not limited to its Trade Secrets and Confidential Information, equipment, access and key cards, computers, peripherals, books, records, drawings, manuals, lists, programs, data compilations and any other property, whether tangible or intangible.  If any such property is not in Employee's possession and control, Employee shall use Employee's best efforts to obtain and return the same and Employee shall not retain any copies, duplicates, reproductions, or excerpts thereof, nor shall Employee show or give any of the above to any third party.

13. **Indemnification.**  Employee expressly agrees to indemnify and hold harmless the Company, its officers, directors, agents and other employees, from any and all loss, damage, expense or cost (including attorney's fees and disbursements attendant thereto) arising out of or in any way relating to the Employee's breach of any duty, obligation, representation, warranty and/or covenant in this Agreement.

14. **Termination of Agreement.**  This Agreement and Employee's entitlement to further benefits hereunder, shall automatically terminate as of the date of the cessation of his/her employment, whether voluntary or involuntary; provided, however, that the provisions set forth in Sections 6 through 13, 15 and 19 shall survive Employee's termination as provided therein.

15. **Damages and Remedies.**  The Company shall, in addition to any other rights and remedies available hereunder, at law or otherwise, be entitled to an injunction to be issued by any court of competent jurisdiction restraining Employee from committing any violation of the covenants set forth in Sections 6 through 12 above, and Employee hereby consents to the issuance of such an injunction upon reasonable proof to the court, without the need of a bond or a showing of actual damages.  The remedies of the Company as set forth herein shall be in addition to and not in limitation of any injunctive relief or other rights or remedies to which the Company is or may be entitled under this Agreement, at law or otherwise.   Where the Company is the prevailing party in any action between the Company and the Employee, the Company shall be entitled to an award of its reasonable attorneys' fees and costs incurred such action.

16. **Modification by Court.**  If any provision of this Agreement is deemed overbroad, unreasonable, or creating such a burden that a court would otherwise find such provision unenforceable, the parties agree that the court shall be authorized to modify such provision to the

extent it believes reasonable so as to best carry out the intentions of the parties to the fullest extent allowed by a court of law or equity.

17. **Assignment**. This Agreement shall not be assignable by Employee nor shall the duties under it be delegable by Employee, but shall be assignable by the Company.

18. **Entire Agreement.** This Agreement supersedes all prior agreements and understandings between the parties concerning the subject matter herein, and constitutes the entire agreement between the parties. This Agreement may be amended or modified from time to time only pursuant to a written agreement executed by both parties.

19. **Governing Law and Jurisdiction**. This Agreement shall be interpreted, construed, and governed according to the laws of the Commonwealth of Virginia, without giving effect to the conflict of law principles thereof. All disputes hereunder shall be brought in and adjudicated by the state and federal courts having jurisdiction for Fairfax County, Virginia. By execution and delivery of this Agreement, each of the parties hereto accepts for itself and in respect of its property, generally and unconditionally, the exclusive jurisdiction of the aforesaid courts. Each of the Parties hereto irrevocably consents to the service of process of any of the aforementioned courts in any such action or proceeding by the mailing of copies thereof by certified mail, postage prepaid, to the party at its address set forth in this Agreement. WAIVER OF JURY TRIAL. ANY ACTION, DEMAND, CLAIM OR COUNTERCLAIM ARISING UNDER OR RELATING TO THIS AGREEMENT WILL BE RESOLVED BY A JUDGE ALONE AND EACH OF THE COMPANY AND EMPLOYEE WAIVE ANY RIGHT TO A JURY TRIAL THEREOF.

20. **Severability.** The provisions of this Agreement are severable, and if any one or more provisions may be determined to be illegal, invalid or otherwise unenforceable, in whole or in part, and not otherwise subject to modification as provided in Section 16 above, the remaining provisions, and any partially unenforceable provision to the extent enforceable, shall, nevertheless, be binding and enforceable.

21. **Nonwaiver**. The failure of the Company to enforce any provision or provisions of this Agreement shall not in any way be construed as a waiver of any such provision or provisions, nor prevent the Company from thereafter enforcing each and every other provision of this Agreement. The rights granted the Company herein are cumulative and shall not constitute a waiver of the Company's right to assert all other legal remedies available to it under the circumstances.

22. **Genders; Number**. Whenever used in this Agreement, reference to any gender shall be deemed to include the other and the neuter, and any reference to the singular shall include the plural and vice versa.

23. **Counterparts**. This Agreement may be executed in two or more counterparts, and by different parties hereto on separate counterparts, each of which will be deemed an original, but all of which together will constitute one and the same instrument.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the day and year first above written.

                                                    GREYSTONES CONSULTING GROUP, LLC

Date: _____          By: _____
                                      Human Resources Manager

                                                    EMPLOYEE:

Date: <u>June 12, 2020</u>          *[signature]*